Argued November 27, affirmed December 22, 1972

# STATE OF OREGON, *Respondent, v.*
# DANIEL DOERGE (No. 26277),
## *Appellant.*

504 P2d 766

*Robert J. McCrea,* Eugene, argued the cause and filed the brief for appellant.

*John W. Burgess*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Defendant was found guilty after jury trial of the crime of unlawful possession of a narcotic drug, namely, marihuana in hashish form. ORS 474.020.[1] The trial judge suspended imposition of sentence and placed defendant on probation for three years.

On appeal defendant contends that the trial judge erred: (1) in failing to grant a directed verdict of not guilty because the state had failed to prove that defendant had actual knowledge of the nature of the narcotic drug contained in the package mailed to him and (2) in instructing the jury as follows:

> "You are also instructed that the evidence here is to be weighed or estimated not only by its intrinsic weight, which means the evidence is to be estimated not only by what the evidence itself proved but also according to evidence which is within the power of the state to produce and the defendant to contradict; therefore if you should find that weaker and less satisfactory evidence was offered by the state when it appears that stronger and more satisfactory evidence was within the power of the state to produce you would have to view the other evidence offered by the state with distrust."

[1] ORS 474.020 was repealed by Oregon Laws 1971, ch 743, § 432, and replaced by ORS 167.202 et seq.

The evidence offered by the state was as follows:

Federal customs agents in Los Angeles intercepted and opened a package from Holland addressed to defendant at his residence in Corvallis. The package contained a kilo of hashish, which was found sealed inside a block of cheese. The package was approximately one foot long, eight inches high and eight inches wide. It was wrapped in a heavy orangish-brown wrapping paper similar to common brown wrapping paper. The wrapping paper was sealed with red and green Christmas-style wrapping tape. Defendant's name and address were written on the outside of the package and the sender's name and address were written above defendant's.

The federal authorities notified the Corvallis police, who placed defendant's residence under surveillance. When a mailman delivered the package to defendant's residence at 12:20 p.m. on December 14, 1971, the police obtained a search warrant authorizing:

"* * * [A]n immediate search * * * of the residence of Daniel Robert Doerge * * * to search for the aforementioned marihuana in hashish form and the hollowed out cheese and package wrapper addressed to * * * [defendant], with the sender listed as J. N. Jansen, Amsterdam, Holland * * *."

About a half hour after the package was delivered the Corvallis police knocked on the door of defendant's residence. Defendant answered the door and admitted the police. Officer Miller read him the search warrant and gave him a copy of it. He next gave defendant the *Miranda*® warning. Then, after informing defendant that they had had his residence under sur-

---

® Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

veillance and that they knew that the package described in the warrant had been delivered, Miller asked defendant "if he would bring it out and give it to us." Defendant replied,

"* * * 'I guess the package you are looking [for] is in here.'"

Defendant then led the officers into an unoccupied rear guest bedroom. Defendant walked over to a closet in the bedroom, knelt down and removed the package from under some bed linen. When defendant removed the linen which was covering the package, Officer Miller saw that the package had been placed between a stack of books and a box. Miller testified that the package could not be seen from the bedroom because of its placement between the books and a box and covered by the linen. The officers then took the package into the kitchen and opened it, exposing the hashish inside the cheese. Defendant was then asked:

"* * * 'Do you mean to tell me that someone fronted you this much hash and you don't know who they are?' * * *"

Defendant answered, "'That's right.'" Defendant was then arrested and the package seized.

Defendant did not testify or present any evidence on trial.

■ Defendant's first assignment of error, namely, that the judge should have granted a directed verdict of not guilty because the state had failed to prove actual knowledge of the contents of the package, is without merit. The trial judge instructed the jury that defendant's knowledge of his possession of hashish could be inferred from the "surrounding circumstances." We agree. The above evidence afforded a sufficient basis from which the jury could reasonably

infer that defendant knew that the package contained the hashish.

As we said in *State v. Neel,* 8 Or App 142, 149, 493 P2d 740 (1971), in discussing the knowledge of possession of marihuana required under former ORS 474.020:

> "We are aware that seldom can direct evidence be produced that the accused had actual knowledge of a given fact. However, knowledge may be inferred from circumstances and a jury can be so instructed."

Viewing the above evidence "in the light most favorable to the state," as we are required to do (*State v. Nix,* 7 Or App 383, 386, 491 P2d 635 (1971)), it is clear that the evidence was sufficient here to enable the jury reasonably to infer that defendant knew that there was hashish in the package when he possessed it. This court may reverse such a finding only if it determines that the inference drawn was not reasonable. *State v. Christenson,* 5 Or App 335, 483 P2d 84, 484 P2d 853, Sup Ct *review denied* (1971).

If defendant did not know that the package contained hashish, as he now contends, why did he take it to a closet in an unoccupied bedroom at the rear of the house, place it in the closet between a stack of books and a box, cover it with linen so that it would be concealed from the view of anyone looking into the closet? It is also significant that defendant denied that he knew the sender's name when he was asked by the police.

In *People v. Superior Court,* 27 Cal App 3d 404, 103 Cal Rptr 874 (1972), the California Court of Appeals in considering a similar contention in a case involving similar facts observed:

> "* * * [T]he consignee of contraband mailed

from outside the United States would know that he was party to an illegal transaction * * *. The argument that like junk mail, four pound packages of marijuana are shipped from overseas at random to innocent consignees who have neither solicited nor been a knowledgeable party to the shipment or receipt of such goods should be rejected as unworthy of consideration * * *." 27 Cal App 3d at —, 103 Cal Rptr at 879.

■ As to defendant's assignment directed to the instruction on weaker and less satisfactory evidence, defendant took no exception to the giving of this instruction. There is therefore no error to review. *State v. Kniss,* 253 Or 450, 451-52, 455 P2d 177 (1969).

Affirmed.