THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DALLAS GORE, Defendant-Appellant.
Third District   No. 82—282

Opinion filed June 21, 1983.

BARRY, J., concurring in part and dissenting in part.

C. J. Hollerich, of Spring Valley, and Robert Agostinelli and Frank Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, Dallas Gore, was arrested and charged with the offenses of driving while under the influence of intoxicating liquor and illegal transportation of alcoholic liquor in violation of sections 11—501(a) and 11—502(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, pars. 11—501(a), 11—502(a)). A third charge was added for unlawful possession of cannabis in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d)). Following a jury trial, defendant was found guilty as charged and sentenced by the Fulton County Circuit Court to serve concurrent prison sentences of 18 months and 364 days for unlawful possession of cannabis and driving under the influence, respectively, and fined $35 plus $2 surcharge and costs for illegal transportation. On appeal, defendant contends that his convictions should be reversed because the State's evidence against him was insufficient as a matter of law; or, in the alternative, that his convictions should be reversed and a new trial granted because the trial he had was unfair.

In September 1981, several days prior to the events giving rise to the offenses herein, Kathryn Lindsey agreed to lend the use of her car to the defendant in exchange for his repairing of it. By September 26, 1981, the car was in working order and Lindsey drove it to the grocery store accompanied only by her five-year old son. There were several beer bottles strewn around the floor, but to Lindsey's knowledge, no cannabis was present in the vehicle. Later that day, the defendant appeared at Lindsey's home and requested to use the car. The request was granted. The defendant, together with Jerry and

Anita Carnes, drove Lindsey's car from Canton to Pekin, Illinois, where they parked the car on the street and went to a tavern for about three hours.

Around 8 p.m., Sergeant Sackett and Deputy Joyce of the Fulton County Sheriff's Department, as they were patrolling along Route 78 south of Canton, received a radio dispatch informing them that a white Mercury bearing an Illinois license plate No. 148 160 was observed driving in an erratic manner and headed towards Canton.

At 8:20 p.m., the officers observed the white Mercury described in the radio dispatch about a mile west of Monterey on Route 9. The vehicle was westbound. It weaved across the center line and into the left lane and then pulled onto the shoulder on the right side several times during a 1/4-mile stretch observed by the officers. The officers pulled the car over and Sackett asked the driver, defendant Gore, to step out for sobriety testing. Deputy Joyce, meanwhile, approached the front passenger side of the car and talked to the Carnesses. While doing so, he shone his flashlight into the passenger compartment and observed what appeared to be an open beer bottle on the back floorboard. He requested that the Carnesses step out, and he retrieved a partially emptied Pabst Blue Ribbon beer bottle. Joyce then conducted a more thorough search and found a brown grocery sack, which appeared to contain cannabis, and a second open beer bottle. The three items were removed from the Mercury and deposited in the squad car. The defendant, having failed the sobriety tests, was placed into the squad car as well. The officers and defendant proceeded to the sheriff's office, where defendant was formally charged. The Carnesses left the scene in the Mercury.

In this appeal, defendant charges that the State failed to prove his guilt of the offenses of illegal transportation of alcohol and unlawful possession of cannabis beyond a reasonable doubt. Specifically, defendant renews his arguments that the substance in the beer bottles was not proved to be alcoholic and that, for purposes of constructive possession of the cannabis, the defendant was not proved to have the requisite knowledge of its presence in the car.

■ The question as to whether the liquid contained in the beer bottles was, in fact, alcoholic, was, in our opinion, a factual one which the jury was competent to determine based upon the testimony of the witnesses called by the State and the jurors' own observations of the beer bottles placed into evidence. Expert testimony in this regard is not essential to a conviction of unlawful transportation of alcoholic liquor. *City of Crystal Lake v. Woit* (1972), 3 Ill. App. 3d 1059, 280 N.E.2d 4; *Keeler Mart Liquors, Inc. v. Daley* (1978), 57 Ill. App. 3d

32, 372 N.E.2d 1049.

■ Officer Joyce testified that he had observed "bottles of beer." Anita Carnes testified that he had removed "alcohol" from the car. The bottles were labeled Pabst Blue Ribbon Beer. They had been sealed, and the liquid was preserved thereby for the jury's consideration. No evidence was introduced which in any way contradicted an inference that, in fact, the liquid was alcoholic. We cannot say, based on the record before us, that the State's evidence of the alcoholic nature of the beer bottles' contents was so unsatisfactory as to create a reasonable doubt of the defendant's guilt of the offense of illegal transportation of alcoholic liquor.

■ However, so far as the sufficiency of the evidence to support the conviction for possession of cannabis is concerned, we believe a different result is required or in other words, we believe the evidence is insufficient to support the conviction.

As may be concluded from the statement of facts, this issue arises because, as the parties concede, the defendant was not in actual possession of the cannabis. It is undisputed the cannabis was discovered by a police officer in a closed brown paper bag underneath the right front seat, the seat being occupied at the time the car was stopped by Jerry and his wife Anita Carnes. It is also undisputed that the bag was discovered in a place where it was not visible to the driver of the car.

The gist of this offense is that it is illegal "knowingly to possess cannabis" (Ill. Rev. Stat. 1981, ch. 56½, par. 704). Possession may be either actual or constructive but the terms are not mutually exclusive. Rather they form a continuum based on the relative immediacy of control. *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, is a leading case for the proposition that exclusive control of premises or of an area in which a substance is located may be considered constructive possession of the article. Depending on the nature of the control of the area exercised, both control of the article and knowledge thereof may be inferred from the control of the area. In *Nettles*, however, the constructive possession of the defendant was shown not merely by his tenancy of the apartment alone, but rather by such tenancy accompanied by his declaration that whatever was discovered in the apartment pursuant to the search was his.

Whether the charge of possession of contraband depends on actual or constructive possession, the offense requires knowledgeable control of the contraband. In *People v. Day* (1977), 51 Ill. App. 3d 916, 366 N.E.2d 895, the owner driver of a car in which there were six other passengers, was held not to be in possession of everything

located within the passenger compartment of the car merely because he was the driver. This declaration is perhaps broader than warranted by the facts in the *Day* case since the evidence showed that the bag containing the cannabis was in the actual possession of one of the passengers, it being located beneath her legs on the floor in plain sight. At least, according to *Day*, the driver of the car in which there are other passengers does not knowingly possess cannabis merely because he is the driver of a car in which cannabis is discovered. To support this conclusion the *Day* court relied in part on *People v. Boswell* (1974), 19 Ill. App. 3d 619, 312 N.E.2d 17, which held that where admittedly cannabis was thrown from a car, nevertheless, this did not prove possession by the passenger seated closest to the window where there were other persons in the car. (See also *People v. Millis* (1969), 116 Ill. App. 2d 283, 252 N.E.2d 395, and *People v. Connie* (1964), 52 Ill. App. 2d 221, 201 N.E.2d 641.) Knowledge as one of the essential elements of the offense will not be inferred merely from access shared by others to the area in which the drugs are discovered. *People v. Wolski* (1975), 27 Ill. App. 3d 526, 327 N.E.2d 308.

■ Where, as in this case, there is a lack of evidence the defendant was in exclusive control of the area under the passenger seat in which the cannabis was concealed and thereafter discovered, evidence is lacking the defendant was any more in possession of the contraband than the passengers in the car or for that matter the owner of the car. All of the parties, including owner, passengers and defendant, denied possession of the contraband or any knowledge about it; anyone of them may have been responsible. The only difference between the situation of these persons and the defendant was that he was the driver of the car at the time of the arrest and at some time prior thereto in the afternoon. Accordingly, we believe the defendant's guilt was not established beyond a reasonable doubt.

There are of course cases in which courts have affirmed convictions for the offense of the illegal possession of cannabis by drivers of cars. The common thread of these cases, at least where there are passengers also involved, demonstrate the presence of additional facts showing special or specific knowledge possessed by the driver. None of these cases purports to hold that when there are passengers in a car, the driver in general control of the operation of the car is in exclusive possession of all areas within the passenger compartment and hence in knowledgeable possession of all articles located within the car. For example, in *People v. O'Neal* (1975), 35 Ill. App. 3d 89, 341 N.E.2d 36, the driver's illegal possession of shotgun shells was affirmed because the defendant "knew the registration was in the com-

partment, the trial court could have reasonably inferred that he placed it there; and since the shells fell out when the door was opened, it was also reasonable to infer that he knew they were there. Obviously, the shells were in the front of the compartment within easy view. They were not wedged in the back of the compartment or buried under other material. Furthermore, the fact that he hastily pushed the fallen shells back into the compartment shows not only prior knowledge of their presence, but an attempt at concealment and the futile hope that their falling may have been unnoticed." (*People v. O'Neal* (1975), 35 Ill. App. 3d 89, 91-92, 341 N.E.2d 36, 39.) While the court's assessment of the reasonableness of the inference to be drawn from the defendant's knowledge the registration was in the glove compartment may be subject to doubt, it is unambiguous that the court did not predicate its affirmance of the defendant's guilt on the mere fact the defendant was the driver of the car.

In *People v. Janis* (1977), 56 Ill. App. 3d 160, 371 N.E.2d 1063, which quotes heavily with approval from *People v. O'Neal*, we find the offense of possession of burglary tools supported by evidence substantially different from the facts in the instant case. The charge in *Janis* was illegal possession of burglary tools which the court described as approximately 200 pounds of tools located in the rear of a van easily visible to the defendant. Obviously, under such circumstances, possession did not arise solely because of the status of the defendant as driver of the van. To the same effect are *People v. Rhoades* (1979), 74 Ill. App. 3d 247, 392 N.E.2d 923, and *People v. Smith* (1978), 67 Ill. App. 3d 952, 385 N.E.2d 707, where the driver was deemed to have knowledge from additional evidence so that knowledge was not inferred merely from the defendant's status as a driver.

■■ On this appeal the defendant has not urged any errors relating to his conviction of driving under the influence of intoxicating liquor but has argued only that if either of his other convictions are reversed the sentence on this conviction should be vacated and the conviction remanded for sentence reconsideration. Since the sentence imposed on this offense is near the maximum and since we are unable to determine whether it was considered independently from the sentence meted out for the illegal possession of cannabis offense which we have reversed, we believe the court should reconsider the proper sentence to be imposed.

For the foregoing reasons, the conviction and sentence of the circuit court of Fulton County for the offense of illegal transportation of alcohol is affirmed and the conviction and sentence of that court for the illegal possession of cannabis is reversed. The conviction of the

defendant for the offense of driving under the influence of intoxicating liquor is affirmed, but his sentence is vacated and the conviction is remanded to the circuit court of Fulton County for reconsideration of the sentence.

Judgment affirmed in part and reversed in part and remanded with directions.

ALLOY, J., concurs.

JUSTICE BARRY, concurring in part and dissenting in part:

I agree with my colleagues' holding concerning the sufficiency of the State's evidence of illegal transportation of alcohol. I am not convinced, however, that the State's evidence of constructive possession of cannabis was insufficient to support the defendant's conviction under section 4(d) of the Cannabis Control Act. The majority's new "visibility" test is neither practical nor warranted by established precedent respecting constructive possession. Indeed, proper analysis by decided case law supports the conclusions reached by the trial court on the facts here presented.

Defendant concedes that constructive possession, as opposed to actual possession, will suffice to prove the criminal element of possession. He further agrees that possession need not be exclusive, but may be joint with one or more other persons. Finally, defendant concedes that if it is shown that the premises where the contraband is located are under the defendant's immediate and exclusive control, an inference of defendant's constructive possession arises and may be sufficient to convict. (*People v. O'Neal* (1975), 35 Ill. App. 3d 89, 341 N.E.2d 36.) However, where other facts and circumstances are introduced which would tend to refute an inference that the defendant had knowledge of the presence of the contraband, some corroborating evidence linking the defendant to it must be in evidence to support a finding of guilt. (*People v. Wolski* (1975), 27 Ill. App. 3d 526, 327 N.E.2d 308.) In arguing that the instant set of facts requires corroborative evidence because of "other facts and circumstances," defendant theorizes that a stranger to the events might have placed the sack in the car at any time between noon and 8:20 p.m. of September 26, 1981, without knowledge of any of those witnesses who denied knowledge of the presence of the sack. Defendant's theory was presented to the jury for their consideration. The State introduced evidence of the value of the contraband to negate the theory. The jury chose not to adopt it.

I believe that this theory was not so credible as to raise a reasonable doubt of guilt. The cases cited by defendant in support of this issue (*Wolski; People v. Connie* (1964), 52 Ill. App. 2d 221, 201 N.E.2d 641; *People v. Lawrence* (1977), 46 Ill. App. 3d 305, 360 N.E.2d 990; *People v. Millis* (1969), 116 Ill. App. 2d 283, 252 N.E.2d 395) are all inapposite because, in each one, specific facts were recited which tended to implicate one or more other specific persons who may have placed the contraband where it was found without the defendant knowing it was there. The defendant invites us to consider *People v. Day* (1977), 51 Ill. App. 3d 916, 366 N.E.2d 895, and *People v. Upmann* (1978), 57 Ill. App. 3d 953, 373 N.E.2d 782, as well, and I have done so. It is true that, as the majority posits, adherence the broad statement of *Day* leads to the conclusion that constructive possession was not proved on the facts before us. However, I do not believe that the opinion in *Day* can be reconciled with *People v. Janis* (1977), 56 Ill. App. 3d 160, 371 N.E.2d 1063, and *People v. O'Neal* (1975), 35 Ill. App. 3d 89, 341 N.E.2d 36, both of which also involved defendants who were drivers of vehicles in which contraband was found in the passenger compartment where other persons were present. In these latter two cases, as here, the vehicles were owned by someone other than the driver. In both *Janis* and *O'Neal* the defendants' convictions were affirmed on appeal upon analysis of the rules pertaining to constructive possession in Illinois. (See especially *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) I find that the decisions in *Janis* and *O'Neal* are better-reasoned. Accordingly, I would adopt the reasoning of those two cases insofar as it applies to constructive possession in the situation presented herein. I expressly reject *Day* to the extent that I believe that it cannot be reconciled.

Further, I find that *People v. Upmann* (1978), 57 Ill. App. 3d 953, 373 N.E.2d 782, is distinguishable on its facts from the case before us. In *Upmann*, the vehicle which the defendant had apparently been driving alone was left unlocked in a field along the side of the road for the 2½-hour period immediately prior to a police officer's discovery of open beer cans in the interior. The court on appeal held that the State had failed to prove immediate and exclusive control of the vehicle by defendant sufficient to support a finding of constructive possession in that situation.

By contrast to *Upmann*, the defendant in the present case was unquestionably in immediate and exclusive control of the vehicle at the moment when it was stopped and searched. Accordingly, I would decline defendant's invitation to speculate that perhaps the contraband had been placed inside the vehicle without the defendant's

knowledge while the car was parked on the street in Pekin for three hours. The rule of *Upmann* does not require such speculation.

For the reasons stated, I would hold that the State's evidence of constructive possession was sufficient to support the defendant's conviction for unlawful possession of cannabis as charged.

Other issues raised by the defendant and which my colleagues choose not to address in disposing of this appeal require the recitation of additional facts respecting procedural aspects of the defendant's trial.

At the defendant's preliminary hearing on October 7, 1981, the court ordered the State to furnish discovery to the defendant by November 9 and the defendant to furnish discovery to the State by December 9, 1981. All pretrial motions were also due on December 9. On March 3, 1982, the court joined the traffic charges with the charge for possession of cannabis and set the case for trial on Monday, March 8.

The State filed its initial discovery answer on October 28, 1981. On March 4, the State forwarded its first supplemental answer to discovery disclosing that forensic scientist, Steve Hampton, would be called as an expert witness. The following day a second supplemental answer, consisting of Hampton's lab report, was hand-delivered to defense counsel; and later, after defense counsel's office had closed, the State delivered a third supplemental answer consisting of Deputy Joyce's police report of the incidents of September 26, 1981.

Monday morning, prior to jury selection, defendant moved for leave to file a motion to suppress evidence. Defendant's motion was denied as untimely and for failure to comply with section 114—12(b) of the Code of Criminal Procedure of 1963, which requires that the motion state facts rather than conclusions. (Ill. Rev. Stat. 1981, ch. 38, pars. 114—12(b), (c).) Several other motions advanced by the defendant on the basis of the State's late discovery were denied as well.

At trial, the State introduced testimony of Officers Joyce and Sackett concerning the events leading up to and including the time of the defendant's arrest on September 26, 1981. Kathryn Lindsey was called to testify that the sack of cannabis was not hers and was not in the car to her knowledge when she gave the defendant permission to drive it. Anita and Jerry Carnes testified that they had no knowledge of the presence of the grocery sack found under the car seat or of its contents or how it might have been placed there. They both said they were unaware of the bag until Officer Joyce removed it. The defendant testified on his own behalf stating, *inter alia*, that he, too, had no

awareness of the presence of the grocery sack of cannabis until the officer produced it and asked him what was inside at the scene of his arrest. Steven Hampton testified that the substance found in the grocery sack was scientifically analyzed and determined to be 212 grams of cannabis.

In rebuttal, the State called Sergeant Daly of the Fulton County Sheriff's Office. Over defendant's objection, Daly testified that he was experienced in the investigation of drug-related offenses and had had numerous conversations with persons who had dealt in them on the street. In his opinion, approximately 200 grams of cannabis, such as was found in the grocery sack, had a street value of approximately $200. The defendant's motion for a mistrial based on irrelevancy of the testimony and its tendency to unfairly prejudice the defendant was denied.

The defendant claims error in the State's belated compliance with discovery orders, the trial court's overruling of defendant's objections to the State's late discovery and the trial court's denial of requests for a continuance and for leave to file a motion to suppress evidence on the day of trial.

Failure to disclose certain evidence to defense counsel upon request and prior to trial may give rise to a violation of the defendant's constitutional right to due process if the evidence is favorable to him (*i.e.*, exculpatory evidence, impeachment evidence, mitigation evidence) or if it may form the basis for a favorable defense argument. (*In re Hatfield* (1979), 72 Ill. App. 3d 249, 390 N.E.2d 453, citing *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) The trial court is given wide discretion in fashioning appropriate sanctions where it is shown that the State has suppressed material subject to disclosure in its possession. (73 Ill. 2d R. 415(g).) On appeal, we will not find an abuse of discretion unless the defendant is prejudiced by the discovery violation and the trial court has failed to eliminate that prejudice. Where prejudice is demonstrated, a new trial may be granted. *People v Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 163.

In the present case, defendant contends that the State's late disclosure of Deputy Joyce's police report prejudiced him because the report disclosed "that the brown paper sack *** was closed, *** was under the seat of the car when it was found, and that it was found, not under the driver's seat, but under the seat of a passenger [and that this information] is evidence which tends to negate the guilt of the accused." As explained above, however, in my opinion, the fact that the sack was under another passenger's seat does nothing in it-

self to defeat a finding of the defendant's constructive possession of the sack and its contents where it has been conclusively shown that the defendant was in exclusive and immediate control of the premises—*i.e.*, the automobile—and there are no other facts or circumstances to refute the inference that defendant had knowledge of the presence of the contraband. Defendant's arguments of prejudice are particularly difficult to embrace where, as here, he readily acknowledges that the possession may be joint. Under the circumstances, additional information concerning whether the paper bag was open or closed when it was found or whether the bag was found under the passenger's seat or elsewhere in the passenger compartment did not constitute evidence favorable to the defense. The defendant's guilt or innocence of the charge based on criminal possession was unaffected by the State's late disclosure. In sum, I do not find that the State's late disclosure of Deputy Joyce's report prejudiced the defendant.

Defendant next argues that the trial court abused its discretion in overruling his objections to the late discovery information concerning expert witness Steve Hampton and his lab report. He argues that his motion *in limine* to exclude the expert's testimony or to continue the cause so that defense counsel could properly interview the witness should have been allowed. In support of this argument, defendant cites Supreme Court Rule 412 (73 Ill. 2d R. 412), and *People v. Shegog* (1976), 37 Ill. App. 3d 615, 346 N.E.2d 208. I agree with the defendant that late disclosure of the names of expert witnesses to be called by the State constitutes a violation of the Supreme Court Rule. However, as explained above, this court will not find an abuse of discretion unless the defendant can show that he was prejudiced by the rule violation and that prejudice was not eliminated by action taken by the trial court. In *Shegog* the undisclosed matter was a confession by the defendant which was first revealed during the State's direct examination of the police detective who had interrogated the defendant shortly after he was apprehended for burglary. Defense counsel objected on grounds of failure to comply with the discovery order previously entered pursuant to Rule 412. The trial court considered defendant's objections in light of the assistant State's Attorney's contention that he had now known about the confession at the time discovery was ordered. The court determined that the testimony was admissible subject to a ruling on defendant's contemporaneously filed motion to suppress. That motion was heard and denied. Defendant was found guilty as charged. On appeal, we found that the State could have been aware of the confession in the exercise of due diligence. (Ill. Rev. Stat. 1973, ch. 38, par. 114—10(c).) We also found that the admission

of the testimony about something as major as a confession which the defendant did not remember, and without giving defense counsel an opportunity to investigate prior to trial, was prejudicial error.

In the present case, the State disclosed the information about Steve Hampton and his lab report on the eve of trial. Before ruling on defendant's motion *in limine* or for a continuance, the trial court heard arguments of counsel. The assistant State's Attorney stated she was not certain that the matter would go to trial until after the hearing of March 3, and that the discovery material was promptly filed thereafter on March 4, and the lab report was disclosed the following day, March 5. The trial court ruled:

> "In respect to Mr. Hampton, prior to his testimony I will afford the Defendant an opportunity to interview him. I submit, however, that a continuance is not appropriate and will be denied here, because the Defendant has, of course, always had the right to have this material examined if he wished."

Under the circumstances here presented, unlike the situation in *Shegog*, I do not believe that the late disclosure revealed information so "earthshaking as to require complete reorganization of the defendant's case." (See *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) In the present case, I believe that any prejudice to the defendant which may have resulted from the late disclosure was eliminated by the trial court's decision to allow an opportunity for defense counsel to interview the witness prior to his testimony. Accordingly, I would hold that the trial court did not abuse its discretion in denying defendant's motion *in limine* or for a continuance on the grounds of late disclosures of Hampton's name as an expert witness and the lab report prepared by him.

Defendant contends next that the trial court committed error in refusing to hear his motion to suppress. The reasons given for the court's decision to deny a hearing were that the motion was not timely filed and that it was not supported by facts as required by section 114—12(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(b)). Defendant's written motion to suppress was filed before the jury was selected but after the cause was called for trial. Defendant's motion was not timely (*People v. Thomas* (1969), 120 Ill. App. 2d 219, 256 N.E.2d 870; *People v. Kahl* (1978), 63 Ill. App. 3d 703, 380 N.E.2d 487) unless defendant had no adequate opportunity to present it earlier or was unaware of the grounds for the motion (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(c)). Defendant argues that the details furnished in Deputy Joyce's report provided grounds for his motion to suppress evidence seized from the

vehicle without a warrant and without probable cause, which grounds were not apparent based on the report filed by Sergeant Sackett.

My review of the reports of both officers and the defendant's written motion to suppress convinces me that defendant's grounds for his motion were readily apparent regardless of which report might have been made available to the defendant on a timely basis. The defendant's arguments for suppression would necessarily have challenged the rule respecting warrantless automobile searches as stated in *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, and *People v. Rossi* (1981), 102 Ill. App. 3d 1069, 430 N.E.2d 233, in any event.

For the same reasons that I have determined that Deputy Joyce's report contained no new bases for advancing a motion to suppress, I would hold that even if defendant's motion had been considered timely and the trial court erred in denying defendant a hearing on the motion,[1] the trial court's error in this case would have been harmless beyond a reasonable doubt. The search of the vehicle was incident to a lawful custodial arrest. The warrantless search was not unreasonable and the contraband seized was admissible evidence at defendant's trial. But for the majority's opinion herein, defendant's arguments to the contrary would have stood no chance of success after *Belton* and *Rossi*.

Finally, defendant contends that the trial court committed reversible error in allowing the State to introduce evidence of the street value of the cannabis in rebuttal. The determination of whether evidence is relevant and admissible in rebuttal is left to the sound discretion of the trial judge. Defendant's position at trial was that the evidence of street value was not relevant, but highly prejudicial to him. Because the defendant's case presented the theory that the cannabis might have been placed in the car by someone without defendant's knowledge, I believe that he opened the door to rebuttal evidence which tended to negate that theory. The State's evidence of street value of the cannabis gave rise to the inference that a person would not casually deposit a bag containing $200 worth of goods in another's automobile. In closing argument, the prosecution drew attention to Sergeant Daly's testimony to make this precise point. The defendant's contention on appeal that this evidence was inadmissible

---

[1]See, *e.g., People v. Sampson* (1980), 86 Ill. App. 3d 687, 408 N.E.2d 3. Without discussing timeliness under section 114—12(c) of defendant's motion to suppress evidence of identification based on an invalid arrest, the court held that the motion which was filed after the jury was sworn should have been heard by the trial court.

evidence of other drug-related crimes for which he was not charged is without merit. The record does not support defendant's assertion that the probative value of the evidence as presented and argued to the jury was outweighed by its prejudice to him. Accordingly, I would hold that the trial court committed no error in admitting this testimony.

For the reasons stated herein, I would affirm the defendant's convictions and sentences.